**NEWSPAPER AGENCY CORP., Petitioner,**

v.

**UTAH STATE TAX COMMISSION, AUDITING DIVISION, Respondent.**

**No. 940694–CA.**

Court of Appeals of Utah.

March 7, 1995.

Rehearing Denied March 31, 1995.

Westfalia has not demonstrated the other essential elements of fraud.

David B. Thompson, Tesch, Thompson & Sonnenreich, L.C., Park City, and Sharon E. Sonnenreich, Gen. Counsel, Newspaper Agency Corp., Salt Lake City, for petitioner.

Jan Graham, State Atty. Gen., and Gale K. Francis, Asst. Atty. Gen., Salt Lake City, for respondent.

Kent W. Winterholler and Maxwell A. Miller, Parsons Behle & Latimer, Salt Lake City, for amici curiae, Utah Taxpayers Ass'n and Utah Mfrs. Ass'n.

Before BENCH, DAVIS and ORME, JJ.

## OPINION

BENCH, Judge:

Petitioner Newspaper Agency Corporation (NAC) petitions for review of a decision by the Utah Tax Commission (Commission) assessing sales tax on NAC's purchases of new equipment and machinery. We reverse.

## FACTS

In 1952, the Kearns–Tribune and Deseret News Publishing Company formed NAC to provide printing services for both the Salt Lake Tribune and the Deseret News. Printing was done at a plant on Regent Street in downtown Salt Lake City. In the mid–1980s, NAC decided to build a new plant. The Commission made the following findings of fact with respect to NAC's construction of its new plant:

> The decision [to build a new plant] was prompted by two motives: First, modern-

ization would permit faster and higher quality printing of the Salt Lake Tribune and Deseret News. Second, it would allow NAC to print local editions of national newspapers, advertising supplements ("preprints") and other contract printing.

NAC had occasionally done contract printing in the past, but was not competitive in that field due to limited capacity and inadequate quality.

Having decided to modernize, NAC faced another decision: Whether to reconstruct the Regent Street plant or build a new plant somewhere else. NAC chose to reconstruct its Regent Street plant in order to maintain its presence in the city center and contribute to the economic health of the downtown area.

NAC reconstructed and re-equipped the Regent Street plant during the audit period. The existing building was expanded by approximately 25% on property already owned by NAC. Forty percent of the building's walls were rebuilt. A new foundation was built to support new printing presses. New plumbing, electrical, ventilation and cooling systems, as well as dust and ink collection systems, were installed.

NAC also purchased additional adjacent land for loading docks and truck parking.

NAC's cost to reconstruct its plant was 95% of what an entirely new building would have cost. The only significant saving was NAC's ability to use land which it already owned.

Before reconstruction, the Regent Street plant contained two letter presses and one offset press. The letter presses were removed from service, the existing offset press was reconfigured, and two new offset presses with supporting machinery and equipment were added. The cost of equipment for the Regent Street plant was 80% of the cost to equip a new plant.

Reconstruction of the Regent Street plant increased NAC's newspaper printing capacity by 20% and its total printing capacity by two-thirds.

In addition to increased capacity, new equipment at the Regent Street plant allowed NAC to produce advertising formats such as "gatefold" and "spadia" that had not been technically possible before.

As a result of NAC's improved quality and increased capacity, it is able to compete for preprint and contract printing.

Construction took three years and cost $37,000,000. Following completion of construction, the Auditing Division of the Tax Commission sent NAC a notice of additional sales tax assessments, a negligence penalty, and interest in connection with NAC's purchase of new equipment and machinery for its new plant. The additional assessment totaled $839,609.21, of which $710,240.90 was for sales tax on the purchase of new equipment and machinery. NAC petitioned for redetermination, claiming that its purchases of equipment and machinery were exempt from sales tax under Utah Code Ann. § 59–12–104(16) (Supp.1989)[1] (providing sales tax exemptions for the purchase of new equipment or machinery in "new or expanding operations"). NAC also requested a refund of $687,299.99, plus interest, for sales taxes it had already paid on purchases of new machinery.

After a full evidentiary hearing, the Commission concluded that NAC did not qualify for a sales tax exemption under section 59–12–104(16) and denied NAC's petition for redetermination.[2] NAC subsequently filed a request for clarification of the Commission's ruling. The Commission denied NAC's request for clarification and NAC filed this petition for review.

## ANALYSIS

Because the Commission conducted a formal adjudicative proceeding, our standard of review is governed by Utah Code Ann. § 59–1–610 (Supp.1994). *See Matrix v. Tax*

---

1. Utah Code Ann. § 59–12–104(16) (Supp.1989) was renumbered as 56–12–104(15) and slightly amended in 1991. For purposes of this opinion we refer to subsection (16), although our analysis is equally relevant to the new subsection (15).

2. Prior to the hearing, the Auditing Division amended its assessment by slightly reducing the amount of the tax, withdrawing the penalty, and recomputing interest accordingly.

*Comm'n,* 868 P.2d 832, 833 (Utah App.1994); *49th Street Galleria v. Tax Comm'n,* 860 P.2d 996, 999 (Utah App.1993), *cert. denied,* 878 P.2d 1154 (Utah 1994). Section 59–1–610(1)(b) requires this court to "grant the [C]ommission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an *explicit* grant of discretion contained in a statute at issue before the appellate court." Utah Code Ann. § 59–1–610(1)(b) (Supp.1994) (emphasis added). Where the Commission has been granted discretion to interpret a term in a statute, its decision will not be overturned unless it is unreasonable. *Morton Int'l, Inc. v. Tax Comm'n,* 814 P.2d 581, 592 (Utah 1991). Regardless of our standard of review and the amount of discretion we are required to accord to the agency's interpretation of statutory terms, we will set aside an agency rule that is inconsistent with its governing statutes. *Sanders Brine Shrimp v. Tax Comm'n,* 846 P.2d 1304, 1306 (Utah 1993) (holding that a rule out of harmony with its governing statute is invalid). Additionally, "[t]he terms of [the] statute should be interpreted in accord with usually accepted meanings. In construing legislative enactments, the reviewer assumes that each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Savage Indus., Inc. v. Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991).

Utah Code Ann. § 59–12–104(16) (Supp. 1989) provides a sales tax exemption for

sales or leases of machinery and equipment purchased or leased by a manufacturer for use in new or expanding operations (excluding normal operating replacements, which includes replacement machinery and equipment even though they may increase plant production or capacity, as determined by the commission) in any manufacturing facility in Utah. Normal operating replacement shall include replacement machinery and equipment which increases plant production or capacity.... For purposes of this subsection, the commission shall by rule define "new or expanding operations" and "establishment."

This section expressly authorizes the Commission to define by rule "new or expanding operations." Pursuant to this authority, the Commission promulgated the following rule:

"New or expanding operations" means manufacturing, processing, or assembling activities which:

a) are substantially different in nature, character, or purpose from prior activities;

b) are begun in a new physical plant location in Utah; or

c) increase production or capacity. This definition is subject to limitations dealing with normal operating replacements.

Utah Admin.R. 865–19–85S.A.3 (1994). The Commission further defined "normal operating replacements" as "machinery or equipment which replaces existing machinery or equipment of a similar nature, even if the use results in increased plant production or capacity." Utah Admin.R. 865–19–85S.A.6 (1994). The Commission therefore allows the sales tax exemption only to manufacturers that satisfy one of the three subparts of Rule 865–19–85S.A.3 as "new or expanding operations."

The Commission held that NAC did not meet any one of the three subparts of Rule 865–19–85S.A.3. Specifically, the Commission made the following conclusions:

Rule R85S.A.3.'s first criterion is that the machinery and equipment be used in activities that are substantially different in nature, character, or purpose from prior activities. NAC points to the improvement in newspaper quality that results from its new equipment. NAC also points to the equipment's ability to produce special advertising formats such as "gatefold" and "spadia". NAC further points to its ability, resulting from the new machinery and equipment, to compete for "preprint" and "contract" printing jobs.

In the Commission's view, the foregoing activities are not substantially different from NAC's prior activities. Rather, they represent the incremental movement of the newspaper industry into an era where newspapers are of higher quality. The Commission finds NAC's activities along these lines to be evolutionary in nature and

not substantially different from prior activities.

Rule R85S.A.3.'s second criterion for a "new and expanding operation" is that the machinery or equipment be used at "a new physical plant location in Utah." The term "location" is commonly defined as "a tract of land designated for a purpose".... [T]he Commission concludes that NAC did not use the machinery and equipment in question at a new location.

. . . .

Rule R85S.A.3.'s third and final alternative test for "new and expanding operation" recognizes machinery and equipment used to "increase production or capacity, subject to limitations dealing with normal operating replacements".... In substance, machinery and equipment that expands capacity satisfies the "new and expanding operation", requirement *only* if the machinery and equipment does not replace existing machinery or equipment of a similar nature.

NAC's new offset presses and auxiliary equipment were placed in a plant that had previously consisted of an offset press and two letter presses. While the new offset presses and supporting equipment offer superior quality and greater capacity than the old letter presses, the basic purpose and actual use of both types of presses is the same: they produce daily newspapers. The Commission therefore concludes that NAC's new machinery and equipment is similar in nature to its old equipment and fails to meet the third alternative test of Rule R85S.A.3. for "new or expanding operation".

Based on the foregoing, the Commission concludes that NAC's purchases of machinery and equipment for its Regent Street plant fail to meet any one of Rule R85S.A.3.'s three definitions of a "new or expanding operation" and therefore do not qualify for exemption from sales tax under § 104(16).

NAC challenges the Commission's rule as being inconsistent with the statute. We will analyze the three tests of the rule seriatim.

### (1) Substantially Different from Prior Activities

■ NAC argues that the Commission's rule requiring that manufacturing, processing, or assembling activities must be "substantially different in nature, character, or purpose from prior activities" is inconsistent with the governing statute. We agree.

Nothing in section 59–12–104(16) requires that a business participate in activities "substantially different in nature, character, or purpose from prior activities" in order to be defined as a "new or expanding operation[ ]." In fact, "expand" commonly means "to increase the extent, size, number, volume, or scope of." *Webster's Third New International Dictionary* 798 (3d ed. 1986). Thus, a business might expand its operations consistent with the usually accepted meaning of "expand" (as the Commission's findings indicate NAC did) thereby qualifying for a sales tax exemption under section 59–12–104(16), but be denied the exemption under the Commission's rule. While section 59–12–104(16) authorizes the Commission to define by rule what constitutes "new or expanding operations," it does not authorize the Commission to define terms contrary to their commonly accepted meaning. *See Savage*, 811 P.2d at 670. Nor does it authorize the Commission to "otherwise limit the availability of the exemption." *Sanders*, 846 P.2d at 1306. We therefore hold that subpart (a) of the Commission's rule is invalid because it is contrary to section 59–12–104(16) and improperly restricts the availability of sales tax exemptions to new products or services.

### (2) New Physical Plant Location

■ NAC also argues that the Commission's rule requiring that activities must be "begun in a new physical plant location in Utah" is contrary to section 59–12–104(16) and impermissibly limits the availability of the sales tax exemption. We agree.

Nothing in section 59–12–104(16) requires that a business begin operations in "a new physical plant location in Utah" in order to be defined as a "new or expanding operation[ ]." The plain language of section 59–12–104(16) makes the sales tax exemption available to "new or expanding operations

... in *any* manufacturing facility in Utah." (Emphasis added.) Section 59–12–104(16) does not authorize the Commission to inconsistently define "*any* manufacturing facility in Utah" to mean *only* "a new physical plant location in Utah." By so doing, the Commission has read the phrase "any manufacturing facility in Utah" out of the statute. Such a rule is not only inconsistent with section 59–12–104(16), but it impermissibly discriminates against businesses such as NAC who, for whatever reason, decide to expand or build a new facility on the same location as their old facility. We therefore hold that subpart (b) of the Commission's rule is invalid because it is contrary to section 59–12–104(16) and improperly restricts the availability of sales tax exemptions to equipment and machinery purchased for use in new physical locations.

(3) Increase in Production or Capacity

■ The Commission has recognized that a business may qualify for a sales tax exemption in subpart (c) by replacing equipment and machinery that results in an "increase in production or capacity." Section 59–12–104(16) excludes "normal operating replacements." In its rule the Commission defined "normal operating replacements" as "machinery or equipment which replaces existing machinery or equipment of a similar nature, even if the use results in increased plant production or capacity." Utah Admin.R. 865–19–85S.A.6 (1994). The Commission held that because NAC's new equipment replaced existing equipment of a similar nature NAC was not eligible for a sales tax exemption.

NAC argues that the Commission's rule defining "normal operating replacements" is contrary to section 59–12–104(16) and impermissibly limits the availability of the sales tax exemption. We agree. Under the Commission's rule and its application of that rule in this case, a business might expand its opera-

tion by replacing its old equipment and machinery with new equipment and machinery giving it a greater capacity and new capabilities thus qualifying for a sales tax exemption under section 59–12–104(16), but be denied the exemption under the Commission's rules. The effect of the Commission's interpretation of "normal operating replacements" is that a manufacturer replacing existing facilities with new machinery and equipment will never qualify for the exemption if the new equipment performs a single function, out of a multitude of functions, which the old equipment and machinery also performed. The Commission's rule, contrary to the governing statute, has eliminated the sales tax exemption for any Utah manufacturer seeking to expand its operations by upgrading and modernizing existing equipment. The Commission has therefore defined "normal operating replacements" in such a way that the sales tax exemption will never be available to a business where the new and old equipment and machinery produce a common product despite any "increase [in] production or capacity."

We recognize that equipment and machinery have limited useful lives and must be replaced as they wear out or become obsolete in the normal course of operation. Such "normal" replacements may not be eligible for a sales tax exemption under section 59–12–104(16). However, where a business replaces equipment and machinery for the express purpose of expanding its operations, as has NAC, it should not be denied the exemption on this ground.[3] We therefore hold that Rule 865–19–85S.A.6. defining "normal operating replacements" is invalid because it is contrary to section 59–12–104(16) and impermissibly restricts the availability of sales tax exemptions.[4]

NAC's Entitlement to Sales Tax Exemption

■ Having concluded that the Commission's rule is invalid, we must determine

---

**3.** The Commission's findings indicate that NAC's existing equipment and machinery was in working condition and did not need to be replaced. As the Commission's findings indicate, NAC replaced its equipment and machinery for the express purpose of expanding its operation and capabilities.

**4.** Although not the basis for our decision, the Commission's rules are also contrary to the legis-

lative history of this section. The history of section 59–12–104(16) clearly indicates that it was intended to provide incentives to Utah industry to "build and expand plants" in order to compete with outside industry, as well as to attract new industry to Utah. Utah House of Representatives, Floor Debate of H.B. 103, 46th Legisl., Reg. Sess., Feb. 22, 1985, Record # 2.

whether the Commission's decision can nevertheless be affirmed under section 59–12–104(16).

The Commission found that NAC was motivated to rebuild its plant in order to permit "faster and higher quality printing of the Salt Lake Tribune and the Deseret News," and to "print local editions of national newspapers, advertising supplements ("preprints") and other contract printing." The Commission also found that NAC was not competitive in the contract printing market prior to expanding its plant due to lack of capacity and inadequate quality. The Commission further found that NAC's building was expanded by twenty-five percent and the existing parts of the building were substantially rebuilt. Finally, the Commission found that the reconstruction increased NAC's newspaper capacity by twenty percent and its total printing capacity by two-thirds, and gave NAC the capability to produce new advertising formats as well as the ability to compete in the contract printing market.

Based on the Commission's findings and the plain meaning of section 59–12–104(16), NAC met its burden of demonstrating that it was a "new or expanding operation[ ]." We therefore conclude that NAC is entitled to a sales tax exemption for its purchases of new equipment and machinery for the expansion of its Regent Street plant.

## CONCLUSION

Based on the foregoing, we conclude that the Commission's rule is invalid because it is inconsistent with section 59–12–104(16). We further conclude, based on the Commission's findings of fact, that NAC qualifies as a "new or expanding operation[ ]" under section 59–12–104(16) and is therefore entitled to a sales tax exemption on the purchase of new equipment and machinery for its Regent Street plant. The Commission's ruling denying the sales tax exemption to NAC is reversed.

DAVIS and ORME, JJ., concur.