**NEWSPAPER AGENCY CORPORATION,
Petitioner,**

v.

**AUDITING DIVISION OF THE UTAH STATE TAX COMMISSION,
Respondent.**

No. 950187.

Supreme Court of Utah.

March 28, 1997.

Rehearing Denied June 3, 1997.

Bruce E. Babcock, David N. Sonnenreich, Sharon E. Sonnenreich, Salt Lake City, for petitioner.

Jan Graham, Att'y Gen., Gale K. Francis, Asst. Att'y Gen., Salt Lake City, for respondent.

Maxwell A. Miller, Kent Winterholler, Salt Lake City, for amicus Utah Manufacturers Assoc. and amicus Utah Taxpayers Assoc.

ZIMMERMAN, Chief Justice:

We granted certiorari to review a court of appeals decision reversing the Utah State Tax Commission's ("the Commission") assessment of sales tax on Newspaper Agency Corporation's ("NAC") purchase and reconfiguration of printing presses. *See Newspaper Agency Corp. v. Utah State Tax Comm'n,* 892 P.2d 17 (Ct.App.), *cert. granted,* 910 P.2d 425 (Utah 1995). In *Newspaper Agency Corp.,* the court of appeals first invalidated the Commission's rule defining the phrase "new or expanding operations" found in section 59–12–104(16) of the Utah Code. *Id.* at 21–22; *see* Utah Admin. Code R865–19–85S(A)(3) (1991). The court of appeals reasoned that the rule improperly restricted the exemption's availability and then addressed NAC's claim for a tax exemption under the statute. *Newspaper Agency Corp.,* 892 P.2d at 21–22. It concluded that the purchases in question were made for "new or expanding operations" under the plain terms of section 59–12–104(16) and were therefore entitled to a sales tax exemption. *Id.* at 22–23. We reverse.

NAC provides advertising, printing, and circulation services for *The Salt Lake Tribune* and the *Deseret News.* Between 1988 and 1991, NAC spent $37,000,000 to renovate its Regent Street plant in downtown Salt Lake City. NAC's renovation project was extensive: "The existing building was expanded by approximately 25% on property already owned by NAC[,][f]orty percent of the building's walls were rebuilt[,][and][a] new foundation was built to support new printing presses." *Id.* at 19. Prior to the renovation, NAC operated two letter presses and one offset press. The renovation included reconfiguring the offset press and replacing the two letter presses with new offset presses. The new and reconfigured presses increased NAC's printing capacity and allowed NAC to produce new advertising formats.

In late 1991, the Auditing Division of the Commission assessed a sales tax on NAC's purchase and reconfiguration of the presses. NAC filed a petition for redetermination, disputing the tax assessment and claiming that it was exempt from the tax. The Commission then held a full evidentiary hearing in which NAC presented expert and fact witnesses. After the hearing, the Commission rejected NAC's argument that the presses were exempt from sales tax under section 59–12–104(16) as a purchase for a "new or expanding operation" in a "manufacturing facility." The Commission found that the presses did not meet any of the three alternative tests for "new or expanding operations" found in the Commission's rule defining that term. *See* Utah Admin.Code R865–19–85S(A)(3) (1991). NAC filed a petition for reconsideration, which was denied.

NAC filed a petition for review, which we granted. We transferred the case to the court of appeals. The court of appeals reversed the Commission, holding that the presses were exempt. *Newspaper Agency Corp.,* 892 P.2d at 23. The court of appeals held that the Commission's rule defining "new or expanding operations" was inconsistent with the terms of the statute it purported to construe, section 59–12–104(16), and that under the plain language of that section, NAC's purchases qualified for the "new or expanding operations" exemption. *Id.* at 21–23. The Commission sought review by this court, which we granted. 910 P.2d 425.

We begin by stating the appropriate standard of review. We review the court of appeals' decision for correctness and give its conclusions of law no deference. *State v. Christensen,* 866 P.2d 533, 535 (Utah 1993). In turn, the correctness of the court of appeals' decision turns on whether the court of appeals reviewed the decision of the Commission with the appropriate standard of review. As the court of appeals recognized, section 59–1–610 governs the standard of review because this case is a review of a formal adjudicative proceeding commenced before the Commission. *Newspaper Agency Corp.,* 892 P.2d at 19; *see also* Utah Code Ann. § 59–1–610(1); Utah Admin.Code R861–1A–5(B). That section provides that an appellate court shall "grant the commission deference concerning its written findings of fact, applying

a substantial evidence standard on review." Utah Code Ann. § 59–1–610(1)(a). Section 59–1–610 also states that the Commission should be granted "no deference concerning its conclusions of law, applying a correction of error standard, *unless there is an explicit grant of discretion contained in a statute at issue." Id.* § 59–1–610(1)(b) (emphasis added). If the Commission is granted discretion by the statute at issue, then the standard of review is narrower. The court is to defer to the Commission's conclusions of law, applying a reasonableness standard. *Eaton Kenway, Inc. v. Auditing Div.,* 906 P.2d 882, 884 (Utah 1995).

Disposition of this appeal turns on the language of section 59–12–104(16),[1] which defines the sales tax exemption, and the Commission's rules purporting to define some critical terms of the statute. Section 59–12–104(16) provides in relevant part:

> The following sales and uses are exempt from the taxes imposed by this chapter:
>
> . . .;
>
> (16) sales or leases of machinery and equipment purchased or leased by a manufacturer for use in new or expanding operations (excluding normal operating replacements, which includes replacement machinery and equipment even though they may increase plant production or capacity, *as determined by the commission*) in any manufacturing facility in Utah. Normal operating replacements shall include replacement machinery and equipment which increases plant production or capacity. . . . *For purposes of this subsection, the commission shall by rule define "new or expanding operations* ". . . .

Utah Code Ann. § 59–12–104(16) (emphasis added). Pursuant to the authority granted it by the two emphasized portions of section 59–12–104(16), the Commission promulgated two separate rules pertinent to this case. The first, rule 865–19–85S(A)(6), defines "normal operating replacements," and the

second, R865–19–85S(A)(3), defines "new or expanding operations."

Because the statute at issue contains two explicit grants of discretion to the Commission, we apply a reasonableness standard to the Commission's conclusions regarding "normal operating replacements" and "new or expanding operations." *Eaton Kenway,* 906 P.2d at 884. Though the Commission has an explicit grant of authority to define "new or expanding operations" and to determine what constitutes a "normal operating replacement," the Commission's conclusion that the "normal operating replacements" exclusion applies to both new and expanding operations is a question of statutory interpretation that we review for correctness. *State v. Brooks,* 908 P.2d 856, 858–59 (Utah 1995).

■ We first address the question of whether the Commission's rule defining "normal operating replacements" is a reasonable interpretation of that term as used in section 59–12–104(16). That section provides that "normal operating replacements" include "replacement machinery and equipment even though they may increase plant production or capacity." To provide further direction in the application of the statute, the Commission promulgated rule 865–19–85S(A)(6), which defined "normal operating replacements" as

> machinery or equipment which replaces existing machinery or equipment of a similar nature, even if the use results in increased plant production or capacity.
>
> (a) If new machinery or equipment is purchased or leased which has the same or similar purpose as machinery or equipment retired from service within 12 months before or after the purchase date, such machinery or equipment is considered as replacement and is not exempt.
>
> (b) If existing machinery or equipment is kept for back-up or infrequent use; new, similar machinery or equipment

---

**1.** Section 59–12–104(16) was amended in 1991 and renumbered 59–12–104(15). Act of Jan. 21, 1991, ch. 5, § 57, 1991 Utah Laws 45. Section 59–12–104(15) was significantly amended in 1995 to phase in a full exemption even for "nor-

mal operating replacements." Act of Mar. 1, 1995, ch. 327, § 1, 1995 Utah Laws 1240–41. All subsequent citations are to section 59–12–104(16) as it stood prior to the 1991 amendment.

purchased would be considered as replacement and is not exempt.

Utah Admin.Code R865–19–85S(A)(6) (1991).[2]

The court of appeals, addressing the matter without any guidance from this court, held that this rule is "invalid because it is contrary to section 59–12–104(16) and impermissibly restricts the availability of sales tax exemptions." *Newspaper Agency Corp.*, 892 P.2d at 22. The court reasoned that businesses replacing equipment and machinery in working order should not be denied the exemption on the ground that it was a normal operating replacement. *Id.* However, after the court of appeals handed down its decision in this case, we explicitly addressed this question. *See Eaton Kenway*, 906 P.2d at 887. There we noted that "[m]odernizing and upgrading machinery and equipment are normally done in the regular course of business, *even though the replaced items may be in good working order.*" *Id.* (emphasis added). We also emphasized that the statute explicitly provides that normal operating replacements shall include machinery and equipment that increase plant production or capacity. *Id.* We concluded that "rule 865–19–85S(A)(6) is reasonable and fairly defines 'normal operating replacements.'" *Id.* We adhere to *Eaton Kenway* and therefore reverse the court of appeals' holding that rule 865–19–85S(A)(6) is invalid.

■ We next move to a determination of whether the Commission acted reasonably in concluding that the circumstances here fall within the definition of "normal operating replacements" in rule 865–19–85S(A)(6). Under the rule, an inquiry must be made into the nature and purpose of the new and reconfigured presses that replaced NAC's old presses. Pursuant to this direction, the Commission examined the functional similarities between the old and new presses. Both the old and the new presses were used to print newspapers and advertisements. To meet publication demands, NAC kept three presses operating at all times during the renovation and press conversions. Each of

the two new presses and the reconfigured press literally replaced an old press. Thus, NAC used the new presses to perform the same tasks performed by the old presses— printing newspapers and advertisements— though the new and reconfigured presses increased NAC's printing capacity and allowed NAC to produce new advertising formats. Finding that the old presses and the new and reconfigured presses performed the same essential functions, the Commission concluded that the new and reconfigured presses were normal operating replacements.

On the basis of the foregoing facts, which are not challenged by NAC, we cannot hold as a matter of law that the Commission was unreasonable in finding that the presses were "normal operating replacements." These facts evidence the replacement of old machinery with similar machinery that is more technologically advanced, efficient, and productive. Section 59–12–104(16), however, expressly provides that "normal operating replacements" include "replacement machinery and equipment even though they may increase plant production or capacity." In addition, this is precisely the type of replacement that we said in *Eaton Kenway* constitutes a normal operating replacement. 906 P.2d at 887. The facts do not demonstrate sufficient differences between the old presses and the new and reconfigured presses to conclude that the Commission was unreasonable in finding that the presses were normal operating replacements. Therefore, the court of appeals should have upheld the Commission's finding.

■ Having concluded that the Commission was reasonable in finding that the presses were normal operating replacements, we must address NAC's argument that the Commission erred by concluding that the normal operating replacements limitation applies to both new and expanding operations.[3] This inquiry necessitates a close reading of section 59–12–104(16).

That section provides in relevant part:

2. The Commission has since renumbered and made minor grammatical changes to this rule. *See* Utah Code Admin. R865–19S–85(A)(6).

3. The court of appeals did not reach this issue, as it had determined that the normal operating replacements limitation applied only to businesses replacing worn out machinery.

The following sales and uses are exempt from the taxes imposed by this chapter: ...;

(16) sales or leases of machinery and equipment purchased or leased by a manufacturer for use in *new or expanding operations (excluding normal operating replacements,* which includes replacement machinery and equipment even though they may increase plant production or capacity, as determined by the commission) in any manufacturing facility in Utah. Normal operating replacements shall include replacement machinery and equipment which increases plant production or capacity.... For purposes of this subsection, the commission shall by rule define *"new or expanding operations"....*

Utah Code Ann. § 59–12–104(16) (emphasis added). The resolution of NAC's challenge turns on whether the parenthetical exclusion of "normal operating replacements" applies to the entire phrase "new or expanding operations" that immediately precedes it or only to the second part of that phrase, "expanding operations." NAC argues for the latter position; the Commission, for the former.

■ We start from the premise that because this is an exemption from taxation, we construe it strictly against the taxpayer. *Eaton Kenway,* 906 P.2d at 886; *Parson Asphalt Prods., Inc. v. Utah State Tax Comm'n,* 617 P.2d 397, 398 (Utah 1990). When interpreting a statute, we look first to the plain language. *State v. Vigil,* 842 P.2d 843, 845 (Utah 1992). On its face, the words "new" and "expanding" both modify the word "operations," suggesting that the exclusion applies to the entire phrase. Supporting this suggestion that the legislature knowingly used the entire phrase together is the fact that the last sentence of the quoted material gives the Commission power to define by rule "new or expanding operations," again using the phrase as a unit.

In view of this plain reading of the statute, we reject NAC's position. The parenthetical sentence in section 59–12–104(16) excluding normal operating replacements applies to the entire phrase "new or expanding operations."

This is precisely how the Commission read the statute when it exercised its discretion in defining the phrase. At the time this controversy arose, administrative rule 865–19–85S(A)(3) provided:

"New or expanding operations" means manufacturing, processing, or assembling activities which:

(a) are substantially different in nature, character, or purpose from prior activities;

(b) are begun in a new physical plant location in Utah; or

(c) increase production or capacity. *This definition is subject to limitations dealing with normal operating replacements.*

Utah Admin.Code R865–19–85S(A)(3) (1991) (emphasis added).[4]

NAC makes a rather convoluted argument under rule 865–19–85S(A)(3) that because of the placement of the last sentence of the quoted portion, the Commission has acknowledged that the "normal operating replacement" exclusion applies only to expanding operations, not to new ones. NAC further contends that this rule also too narrowly defines "new operations" and that NAC's remodeling qualifies as a "new" operation. We need not dwell on this contention. It amounts to a claim that the tail should wag the dog.

Section 59–12–104(16) gives the Commission the power to define by rule the phrase "new or expanding operations," but that delegation of authority does not include the power to define the phrase in a way that flatly contradicts the statute. *Sanders Brine Shrimp v. Audit Div.,* 846 P.2d 1304, 1306

---

4. The Commission amended and renumbered this rule in 1994. It now provides:

(a) "New or expanding operations" means manufacturing, processing, or assembling activities that:

(1) are substantially different in nature, character, or purpose from prior activities;

(2) are begun in a new physical plant location in Utah; or

(3) increase production or capacity.

(b) The definition of new or expanding operations is subject to limitations dealing with normal operating replacements.

Utah Admin.Code R865–19S–85(A)(3).

(Utah 1993); *Robert H. Hinckley, Inc. v. State Tax Comm'n,* 17 Utah 2d 70, 404 P.2d 662, 668 (1965). As we have noted, the statute's plain language makes the exclusion applicable to the entire phrase. The Commission's rule cannot do otherwise, and we do not find that when read fairly, it does so.

A fair reading of the rule applies elementary rules of punctuation and grammar. The Commission defined "new or expanding operations" by setting forth three alternative tests. These tests are listed in a single sentence, albeit one separated into three subparts by a colon and semicolons. Utah Admin.Code R865–19–85S(A)(3) (1991). This sentence is followed by a sentence that states, "*This definition* is subject to limitations dealing with normal operating replacements." *Id.* (emphasis added). Because the preceding sentence containing the three tests defines "new or expanding operations," the plain meaning of the words "[t]his definition" in the last sentence is to refer to the entire sentence defining "new or expanding operations," not merely to the last alternative test, as NAC argues.

Thus, the language of both section 59–12–104(16) and rule 865–19–85S(A)(3) confirm that the normal operating replacements limitation applies to both new and expanding operations. Because the Commission reasonably found that the presses were normal operating replacements and because the normal operating replacements limitation applies to both new and expanding operations, NAC is not entitled to the section 59–12–104(16) exemption. Consequently, the court of appeals erred in overruling the Commission. We therefore reverse the court of appeals.

HOWE, DURHAM, RUSSON and NOEL, JJ., concur in Chief Justice ZIMMERMAN's opinion.

Having disqualified himself, Associate Chief Justice STEWART does not participate herein; District Judge FRANK G. NOEL sat.