**2020 UT App 21**

## THE UTAH COURT OF APPEALS

JULIE RIVET,
Appellant,
*v.*
LOUIS HOPPIE,
Appellee.

Opinion
No. 20181018-CA
Filed February 13, 2020

First District Court, Logan Department
The Honorable Brian G. Cannell
No. 164100697

Marlin J. Grant, Attorney for Appellant

Paul H. Gosnell, Attorney for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES KATE APPLEBY and JILL M. POHLMAN concurred.

MORTENSEN, Judge:

¶1 During a years-long relationship, and after four marriage proposals, Julie Rivet and Louis Hoppie never formally married. Toward the end of the relationship, Rivet petitioned the district court to recognize a common-law marriage between her and Hoppie. After three hearings, the district court ruled that Rivet "failed to establish a common-law marriage under Utah Code Ann. Section 30-1-4.5." Specifically, the district court concluded that although Rivet met four of the elements required to establish the existence of a common-law marriage, she did not satisfy the final elements requiring the parties to hold themselves out as a married couple and to acquire a uniform and general reputation as husband and wife. We affirm.

BACKGROUND

¶2 Rivet and Hoppie began their relationship in 2009. In September 2015, the parties "ceased cohabitating" but did not officially terminate the relationship until sometime in 2017. In December 2016, Rivet petitioned the district court to recognize the relationship as a common-law marriage.

¶3 During the first evidentiary hearing, Rivet moved to admit two contested exhibits: (1) an affidavit from Rivet's former attorney concerning statements made by Hoppie in their discussion on how to resolve the petition (Exhibit 2) and (2) a collection of written statements by members of the parties' community expressing their opinions regarding the parties' relationship status (Exhibit 10). Hoppie challenged the exhibits as hearsay. Rivet conceded the statements contained in the exhibits were hearsay, but suggested that the hearing was informal and that the statements could be considered. The court asked Rivet's counsel if there was "something . . . that says I can rely on [the] documents," explaining that if there was support for their admission, the court would allow it. Rivet did not engage with the court on the question or provide a theory under which the exhibits could be admitted. The court excluded the exhibits as hearsay. Later, during the same hearing, Rivet referenced Exhibit 2 to refresh the recollection of a witness, prompting an objection from Hoppie. The court interjected, "I haven't received [Exhibit 2] as evidence. . . . [I]t refreshed [the witness's] recollection." Rivet then stated she sought to introduce Exhibit 2 only for that purpose, after which the court reiterated, "I'm not going to receive [Exhibit 2] at this stage." Rivet simply responded, "Okay." The court further indicated that Rivet's former attorney could be called to testify at a later hearing. But Rivet never called her former attorney to testify.

¶4 Rivet also sought to introduce Exhibit 10, comprising the responses of several individuals to the query: "In your opinion

did Julie Rivet and Lou Hoppie appear to be living together the same as a married couple? And, represent themselves in public and social gatherings as such?" The court responded, "It's technically hearsay. . . . So I'm not going to receive it . . . . We'll reserve the issue and allow for those witnesses to be brought before the Court." Rivet offered no response.

¶5     For the duration of the hearing, the parties presented conflicting evidence concerning the nature of the relationship, including testimony from their friends. At the conclusion of the hearing, Rivet asked whether she needed to call the individuals represented in Exhibit 10 as witnesses. The court responded, "It's your burden. I'm not going to tell you how to present it to me. . . . You're going to have to put on your case and live with it."

¶6     During the second evidentiary hearing, Rivet called only one of the seventeen individuals identified in Exhibit 10 to testify. Additional testimony was offered by Hoppie's son, Hoppie's insurance agent, and the parties themselves.

¶7     Also during the second hearing, Rivet twice tried to reference a portion of Exhibit 2. Both times, the court told Rivet it would not admit the exhibit, and the court later explained that its decision to exclude Exhibit 2 was based on rule 408 of the Utah Rules of Evidence, which bars, in some circumstances, the admission of evidence connected with compromise offers and negotiations. Throughout the hearing, the parties presented additional evidence, including tax documents showing Hoppie's filing status as single during a period of the relationship, bank statements showing the parties maintained separate financial accounts, and insurance documents identifying Hoppie as single and Rivet as married.

¶8     During the third hearing, the court heard additional argument from Rivet and Hoppie and acknowledged receiving a

trust document executed by Hoppie referencing Rivet as "beneficiary." The court then ruled and concluded that Rivet did not prove the elements of a common-law marriage by a preponderance of the evidence. The court later issued a memorandum decision finding that Rivet and Hoppie "cohabitated with one another, and assumed marital rights, duties, and obligations thus establishing the elements of Utah Code Ann. Section 30-1-4.5(1)(a)–(d)." But the court also found that the parties merely "held themselves out as being in a committed relationship . . . . [T]hey did not hold themselves out as husband and wife, nor did they acquire a uniform or general reputation as husband and wife as required by Utah Code Ann. Section 30-1-4.5(1)(e)." Accordingly, the court denied Rivet's requested relief and dismissed her petition. Rivet appeals.

ISSUE AND STANDARD OF REVIEW

¶9 On appeal, Rivet contends that the district court's "findings were insufficient to support [Hoppie's] position" that there was no common-law marriage.[1] In substance, Rivet does

---

1. Rivet also contends that the court erred by not admitting Exhibits 2 and 10 into evidence, arguing that they were admissible under four separate rules of evidence. We decline to address the argument because Rivet did not preserve these issues. While Rivet offered Exhibits 2 and 10, she provided no justification for their admission, much less the four legal theories she presents for the first time on appeal. *See State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 ("When a party fails to raise and argue an issue in the [district] court, it has failed to preserve the issue . . . ."). We also decline to review Rivet's appeal of the district court's exclusion of Exhibit 2 because Rivet does not challenge the court's alternative basis for its decision under rule 408 of the Utah Rules of Evidence. And when an appellant "fails to

(continued…)

not contest the adequacy of the court's findings, but the sufficiency of the evidence supporting some of its findings. Additionally, Rivet's framing of the issue flips the script. It was Rivet, as the petitioner, who bore the burden of proving the elements of a common-law marriage. *See Hansen v. Hansen*, 958 P.2d 931, 935 (Utah Ct. App. 1998) (stating that a claimant "must prove each of six different elements to establish" a common-law marriage). "We do not reverse a [district] court's findings of fact unless they are clearly erroneous." *Kelley v. Kelley*, 2000 UT App 236, ¶ 18, 9 P.3d 171 (cleaned up). Furthermore, when a party fails to challenge factual findings "we assume that the record supports the findings . . . and proceed to a review of the accuracy of the lower court's conclusions of law and the application of that law in the case." *Heber City Corp. v. Simpson*, 942 P.2d 307, 312 (Utah 1997) (cleaned up); *see also Hansen*, 958 P.2d at 936–37.

## ANALYSIS

¶10    Rivet contends that certain of the court's findings are clearly erroneous because of how the court weighed the evidence. Although Rivet enumerates several findings as clearly erroneous, she substantively challenges only a few of those. *See Hahn v. Hahn*, 2018 UT App 135, ¶ 20, 427 P.3d 1195 (declining to address inadequately briefed issues under rule 24(a)(8) of the Utah Rules of Appellate Procedure). Consequently, Rivet fails to adequately challenge pertinent findings that independently

---

(…continued)
challenge the [district] court's alternative basis for its decision," the reviewing court generally may not consider the issue sua sponte. *Deseret First Fed. Credit Union v. Parkin*, 2014 UT App 267, ¶ 13, 339 P.3d 471 (citing *Allen v. Friel*, 2008 UT 56, ¶ 7, 194 P.3d 903).

support the district court's conclusion that Rivet failed to establish the final elements of a common-law marriage: that the parties "hold themselves out as and have acquired a uniform and general reputation as husband and wife." Utah Code Ann. § 30-1-4.5(1)(e) (LexisNexis 2019).[2]

¶11    This court has indicated that a partial or divided reputation of marriage is insufficient to meet the requirements of section 30-1-4.5(1)(e). *See Hansen v. Hansen*, 958 P.2d 931, 936 (Utah Ct. App. 1998). A partial or divided reputation of marriage may be shown when "the parties' closest friends [do] not consider the [parties] married" and the parties are "not consistent in holding themselves out as married to the rest of the world." *Id.* Such circumstances "negate[] the establishment . . . of the statutory requirement that the couple acquire[] a uniform and general reputation as husband and wife." *Id.* (cleaned up).

¶12    The district court made unchallenged findings that negated the establishment of section 30-1-4.5(1)(e). In particular, the court found the following:

> 7. During the course of the relationship the parties held themselves out as being in a committed relationship, however, they did not hold themselves out as husband and wife, nor did they acquire a uniform or general reputation as husband and wife . . . .
>
> . . . .

---

2. The statutory provision in effect at the relevant time does not differ in any material way from the current provision. We therefore cite the current version of the Utah Code for the reader's convenience.

12. . . . [Rivet's witness] also stated . . . that neither party wore wedding rings . . . and that the parties never referred to each other as "husband" or "wife" but instead referred to each other by the first names. . . . [The witness] while testifying . . . claimed that they held themselves out as husband and wife. However, when pressed for examples of the parties holding themselves out as a married couple he could provide none, and admitted that his belief they were married was based merely on an assumption.

13. [Hoppie's] witnesses each testified that they knew the parties were not married . . . [and n]ever observed either party refer to themselves as "husband," "wife," or "spouse."

14. [Another witness] testified that [Hoppie] never requested changing his status to married . . . or listing [Rivet] as a spouse. . . . [H]e did not believe [Hoppie] had a reputation of being a married individual. . . . [H]e did not believe the parties were married because of discussions they had with him in his office, and . . . [Hoppie] was always opposed to bringing [Rivet] onto other legal documents or referring to her as a spouse.

¶13 The unchallenged findings indicate at least some of the parties' friends and family did not consider them to be married and the parties did not consistently represent themselves to be husband and wife. Those facts negate the establishment of the statutory requirements under *Hansen*. Accordingly, the unchallenged findings adequately support the district court's conclusion that Rivet "failed to establish a common-law marriage under Utah Code Ann. Section 30-1-4.5." Therefore, the

district court accurately applied the law in denying Rivet's petition.

## CONCLUSION

¶14    The district court correctly concluded that Rivet failed to establish a common-law marriage in light of its findings indicating that the parties did not hold themselves out as, and did not acquire a uniform and general reputation as, husband and wife. We therefore affirm the district court's dismissal of the petition.[3]

───────────

3. Hoppie seeks attorney fees incurred on appeal under rule 33 of the Utah Rules of Appellate Procedure, arguing that Rivet's appeal is frivolous "[g]iven the findings in *Hansen v. Hansen*, . . . and the clear record supporting the trial court's findings." Rule 33 permits an award of damages, including attorney fees, for appeals "not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." Utah R. App. P. 33(b). "The sanction for bringing a frivolous appeal is applied only in egregious cases, lest there be an improper chilling of the right to appeal erroneous lower court decisions." *Marroquin v. Marroquin*, 2019 UT App 38, ¶ 36, 440 P.3d 757 (cleaned up). While Rivet's arguments are ultimately unpersuasive, they were not so egregious as to warrant an imposition of rule 33 sanctions. We therefore decline to award Hoppie attorney fees.