2020 UT App 77

# THE UTAH COURT OF APPEALS

CARMELITA VOLK,
Appellee,
*v.*
JOHN VECCHI,
Appellant.

Opinion
No. 20180776-CA
Filed May 14, 2020

Third District Court, West Jordan Department
The Honorable James D. Gardner
No. 154907478

David S. Pace, Attorney for Appellant

Karra J. Porter and Kristen C. Kiburtz,
Attorneys for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES KATE APPLEBY and RYAN M. HARRIS concurred.

POHLMAN, Judge:

¶1     John Vecchi and Carmelita Volk entered into a relationship and began living together around 1999, but the two never formally married. After separating in 2015, Volk petitioned for divorce, asserting that the parties had established a common law marriage. The district court agreed. Vecchi appeals, arguing that the court erred because Volk did not establish all the required elements for common law marriage in Utah. He also challenges the court's alleged failure to order that the parties equally share the costs of a custody evaluation. We affirm.

## BACKGROUND[1]

¶2 Volk and Vecchi met in approximately 1996. In 1999, they began dating and moved in together. With the exception of about one year in approximately 2001 or 2002, they lived together in California from 1999 until the summer of 2012, when they moved to Utah.

¶3 During the parties' time in California, they had two children together. Around the time their first child was born, the parties "specifically agreed" that Volk "would be a stay-at-home mother and [Vecchi] would pursue his career." To that end, they "agreed to divide up the responsibilities—with [Volk] taking on primary responsibility for the children and household duties," while Vecchi "provide[d] financially for [Volk] and the kids." They also agreed to "pool their resources together and share equally in everything that was accumulated (and in debts)."

¶4 As evidence of their agreement, the parties jointly purchased four properties together during their relationship— two in California, one in Illinois, and one in Utah. They were co-borrowers on the loans, held title jointly, and shared in the maintenance of each property. They also maintained "joint checking and savings accounts, joint car loans, and joint credit cards." Indeed, as Volk later testified at trial, "none of the financial aspects of their lives were handled separately."

¶5 In early 2012, Vecchi began working for a company in Utah. Because the parties "agreed that their children should remain in California to finish the school year," Vecchi commuted

---

1. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard." *Chesley v. Chesley*, 2017 UT App 127, ¶ 2 n.2, 402 P.3d 65 (cleaned up).

for approximately six months before the parties and their children moved to Utah in the summer of 2012.

¶6     In late 2014, the parties began experiencing significant difficulties in their relationship, and they separated in March 2015. In November 2015, Volk filed a petition for divorce, seeking, among other things, a declaration of common law marriage, alimony, child support, and equitable division of the couple's assets. During the proceedings, the court ordered a custody evaluation for the parties' children. The court required Vecchi to pay for the evaluation but indicated that "[f]inal allocation of this cost, if any, shall be reserved for trial."

¶7     After a bench trial, the district court concluded that Volk had carried her burden of demonstrating that the parties had established a common law marriage for the time they resided in Utah—approximately thirty months. On that basis, the court ordered, among other things, equitable division of the parties' assets as well as alimony in Volk's favor for thirty months, the length of the common law marriage in Utah. The court also determined that it was "fair and equitable" for each party to pay, aside from one exception not relevant to this appeal, "his or her own attorneys' fees and costs."

¶8     Vecchi appeals.

ISSUES AND STANDARDS OF REVIEW

¶9     Vecchi raises two main issues on appeal. First, he argues that the district court erred in determining that Volk had shown that the parties established a common law marriage in Utah. Specifically, he argues that the court erred by determining "that the parties had acquired a uniform and general reputation as husband and wife" and that "the parties had consented to a common law marriage contract while residing" in Utah. We review the district court's interpretation of the common law

marriage statute for correctness, *Hansen v. Hansen*, 958 P.2d 931, 933 (Utah Ct. App. 1998), but we review the court's findings of fact for clear error and its application of the statute to those findings for abuse of discretion, *Clark v. Clark*, 2001 UT 44, ¶ 14, 27 P.3d 538.

¶10 Second, Vecchi argues that the district court erred by failing to order that the costs of the custody evaluation be shared equally between the parties. When the issue is preserved, we review the district court's denial of costs and fees for abuse of discretion. *See Penunuri v. Sundance Partners*, 2017 UT 54, ¶ 15, 423 P.3d 1150; *Leppert v. Leppert*, 2009 UT App 10, ¶ 10, 200 P.3d 223; *Wilde v. Wilde*, 969 P.2d 438, 442 (Utah Ct. App. 1998). However, when, as here, an appellant challenges the adequacy of the district court's findings for the first time on appeal, we consider the issue waived. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶¶ 50–56, 99 P.3d 801; *Shuman v. Shuman*, 2017 UT App 192, ¶ 2, 406 P.3d 258.

## ANALYSIS

### I. The District Court's Common Law Marriage Determination

¶11 As discussed above, the district court determined that Volk proved that the parties established a common law marriage during their time in Utah. Vecchi challenges this determination on two grounds. First, he argues that the court erred when it determined that the parties acquired a uniform and general reputation as being married. Second, he argues that the court erred when it determined that the parties consented to a common law marriage.

¶12 Before 1987, Utah did not recognize common law marriages. *Whyte v. Blair*, 885 P.2d 791, 793 (Utah 1994). However, in 1987, our legislature enacted Utah Code section 30-1-4.5, which provides the requirements for establishing the

validity of a marriage that has not been solemnized. *See id.* That section sets out five requirements to establish the validity of such a marriage:

> A marriage which is not solemnized according to this chapter shall be legal and valid if a court or administrative order establishes that it arises out of a contract between a man and a woman who:
>
> (a) are of legal age and capable of giving consent;
>
> (b) are legally capable of entering a solemnized marriage under the provisions of this chapter;
>
> (c) have cohabited;
>
> (d) mutually assume marital rights, duties, and obligations; and
>
> (e) who hold themselves out as and have acquired a uniform and general reputation as husband and wife.

Utah Code Ann. § 30-1-4.5(1) (LexisNexis 2019).[2] Additionally, the marriage contract must arise between "two consenting parties." *Hansen v. Hansen*, 958 P.2d 931, 935 (Utah Ct. App. 1998); *see also Whyte*, 885 P.2d at 794–95 & n.3 (recognizing that "whether the parties consented to be married is often disputed," and setting forth evidence that may be used to establish consent). In proving the existence of a common law marriage, "[n]o single factor is determinative," but each required element must be established by sufficient evidence. *Whyte*, 885 P.2d at 794; *Hansen*, 958 P.2d at 935.

---

2. Because there have been no material changes to this statute since 2015, we cite the current version for convenience.

¶13    As we explain below, we conclude that Vecchi has not shown that the district court abused its discretion by determining that the parties had acquired a uniform and general reputation as a married couple and that they had consented to a marriage while living in Utah. On this basis, we affirm the district court's determinations on both points.

A.    Uniform and General Reputation

¶14    Vecchi first challenges the district court's determination that the parties had acquired a uniform and general reputation as husband and wife. *See* Utah Code Ann. § 30-1-4.5(1)(e). He points to a few witnesses who testified at trial that they were informed (and therefore knew) that the parties were not legally married, and he claims this testimony evidences that the parties enjoyed a "divided" rather than a "uniform and general" reputation as husband and wife.

¶15    It is true that "a partial or divided reputation of marriage is insufficient" to establish that a couple has acquired a "uniform and general reputation as husband and wife," as required by section 30-1-4.5(1)(e). *Rivet v. Hoppie*, 2020 UT App 21, ¶ 11, 460 P.3d 1054; *see also Hansen*, 958 P.2d at 936. For example, "a partial or divided reputation of marriage may be shown when the parties' closest friends do not consider the parties married and the parties are not consistent in holding themselves out as married to the rest of the world." *Rivet*, 2020 UT App 21, ¶ 11 (cleaned up).

¶16    Here, however, the court rejected the notion that the parties' reputation was divided and concluded that Volk met her burden of showing that they had acquired a "general reputation as husband and wife." The court found that Volk testified consistently about the fact that she "regularly referred" to Vecchi as her husband, that "she considered them to be married," and "that she routinely introduced [Vecchi] as her husband to third parties" and otherwise "regularly represented herself as being

married." Volk also testified that both parties "provided documentation and information to third parties, including lenders, reflecting her and [Vecchi] as married" and that they also generally "presented themselves as a married couple." And the court found that, although Vecchi's "testimony was inconsistent and contradictory," Volk's testimony on these points nevertheless was "supported in large part by [Vecchi's] testimony."

¶17 Additionally, the court found that "a number of third-party witnesses called by [Volk] provided consistent and persuasive support for the requirement" that the parties acquired a uniform and general reputation of being husband and wife. For example, the court found that a neighbor had the impression that the parties were married "based on how they held each other out, interacted with each other and socialized with others" and that he "did not observe or hear anything during his acquaintance with [the parties] . . . that made him question whether they were married." The court also found that several of the parties' acquaintances from their children's school similarly held the belief that the parties were married. One witness testified that "in every discernible way she thought [the parties] were a married couple," while another testified that in her view "there was never a suggestion" in the parties' behavior that "they were not married." Yet another testified that the parties "appeared to be a normal married couple" and that the witness observed "nothing" that "suggested otherwise."

¶18 Vecchi raises no challenge to these findings. *See Clark v. Clark*, 2001 UT 44, ¶ 16, 27 P.3d 538 (concluding that there was sufficient evidence that a couple had acquired a uniform and general reputation as husband and wife where each party "routinely introduced each other as husband and wife" and "at least two witnesses, including a neighbor and a former daughter-in-law, believed [the couple was] married" based in part on the fact that the couple "acted like a husband and wife

would act" (cleaned up)); *Hansen*, 958 P.2d at 936 (noting that a uniform and general reputation for marriage may be shown by "the understanding among the neighbors and acquaintances with whom the parties associate in their daily life, that they are living together as husband and wife" (quoting *People v. Lucero*, 747 P.2d 660, 665 (Colo. 1987))). Instead, Vecchi's entire challenge is based on the testimony of a few witnesses he claims knew that their union had not been solemnized, arguing that the existence of persons who "were specifically informed and aware" of the parties' legal marital status is fatal to the establishment of this element.

¶19    In this respect, Vecchi points to testimony by a longtime coworker and friend (Friend) from California who testified he knew that the parties had never formally married. He also points to testimony of the human resources vice president of his employer in Utah, who testified that Vecchi informed her of his legal marital status for health insurance purposes and she had to change the company's health insurance plan to accommodate Vecchi's relationship status. And he points to testimony of one of Volk's witnesses (Witness), who said that Volk told her that the parties had never formally married.

¶20    But in crafting section 30-1-4.5, our legislature chose to base this requirement on the couple's acquisition of a uniform and general *reputation* for being husband and wife, not on the awareness by a few of the legal status of a couple's union. *See* Utah Code Ann. § 30-1-4.5(1)(e); *see also Nichols v. Jacobsen Constr. Co.*, 2016 UT 19, ¶ 17, 374 P.3d 3 ("When we interpret a word within a statute, we first consider its plain meaning. In looking to determine the ordinary meaning of nontechnical terms of a statute, our starting point is the dictionary." (cleaned up)); *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (stating that "our primary goal" when interpreting statutes "is to evince the true intent and purpose of the Legislature," which requires that we look to "the plain language of the statute

itself" and presume that "the legislature used each term advisedly according to its ordinary and usually accepted meaning" (cleaned up)).

¶21 The plain meaning of the term "reputation" indicates that it does not rise and fall on particular persons' knowledge. Rather, a reputation is a collective perception or estimation by the public or a community. *See Reputation*, Dictionary.com, https://www.dictionary.com/browse/reputation [https://perma.cc/YU63-VBPZ] (defining "reputation" as "the estimation in which a person or thing is held, especially by the community or the public generally"); *Reputation*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/ reputation [https://perma.cc/X4GE-ANSG] (defining "reputation" as an "overall quality or character as seen or judged by people in general" and "recognition by other people of some characteristic or ability").

¶22 Likewise, the plain meaning of the terms "uniform" and "general" do not obviously modify the term "reputation" such that a few persons' isolated awareness of the legal status of the parties' relationship, without more, is sufficient to undermine an acquired community perception that the parties are husband and wife. For example, "uniform" is defined as "consistent" and having "always the same form, manner, or degree." *See Uniform*, Merriam-Webster.com, https://www.merriam-webster.com/ dictionary/uniform [https://perma.cc/6EEV-EEQS]. In this respect, a couple's acquired *reputation* for being married—one created by the couple's conduct in holding themselves out as such—may be consistent in a community despite some isolated awareness that the couple is not legally married. Likewise, even assuming that isolated instances of awareness alone could affect the parties' overall reputation for being married, the definition of "general" inherently includes "possible exceptions." *See General*, Dictionary.com, https://www.dictionary.com/browse/general [https://perma.cc/8S

CU-Y6HH] (defining "general" as "of, relating to, or true of such persons or things in the main, with possible exceptions; common to most; prevalent; usual" and "considering or dealing with overall characteristics, universal aspects, or important elements, especially without considering all details or specific aspects").

¶23   As described above, the district court determined that the parties consistently held themselves out, and were also consistently perceived by others, as though they were legally married; the court found that the parties and "a number of third-party witnesses" testified to that end. Vecchi has not shown or explained how, despite the court's numerous determinations on this issue, the isolated awareness of his legal marital status by a confidant or two affected the collective, community perception and estimation of his relationship with Volk.

¶24   Moreover, Vecchi's reliance on Friend's and Witness's testimonies to make his argument also seems misplaced, given that each also testified to the marriage-like quality of the parties' relationship. For example, Friend testified that while Vecchi told him he never had a "formal marriage ceremony," Friend nevertheless viewed the parties' relationship as exclusive and committed—more than simply a boyfriend-girlfriend relationship—and related that when they worked together in California, it was a joking matter that "even though [Vecchi's] not married, he acts as if he's married." Likewise, Witness testified that both parties referred to each other as husband and wife, and she believed the parties were married based on the parties' move to Utah with their children and her own observations with respect to the parties' roles in the relationship. Witness also testified that she did not "think much" of the conversation she had with Volk about the parties' lack of a marriage ceremony "before or after" the conversation occurred, because Volk "expressed that she felt [the parties] were married"

and Witness "didn't see any difference" in the parties' relationship.

¶25   In short, Vecchi has not shown that these witnesses' awareness of the parties' legal relationship status created a "partial or divided" reputation for being husband and wife. We therefore conclude that the district court did not abuse its discretion by determining that the parties had acquired a uniform and general reputation for being husband and wife while in Utah.

B.      Consent

¶26   Vecchi next challenges the district court's determination that the parties consented to a common law marriage. He points to the fact that Volk allegedly proposed to him twice, including once after moving to Utah, and that he declined both times. He also generally asserts that the parties purposefully declined to formally marry despite being able to do so at any time.

¶27   As explained by our courts, parties to a common law marriage must consent "to the rights and responsibilities that accompany a legally recognized marital relationship." *Hansen*, 958 P.2d at 936; *see also Whyte*, 885 P.2d at 794 (describing the consent required as consent "to be married" and to "assume all marital responsibilities"). While the "best evidence of marital consent is a written agreement . . . by both parties" manifesting the requisite consent, our courts have noted that consent may be established by evidence of certain circumstances in the parties' relationship, such as "maintenance of joint banking and credit accounts; purchase and joint ownership of property; the [sharing of a spouse's] surname by the [other spouse] and/or the children of the union; the filing of joint tax returns; speaking of each other in the presence of third parties as being married; and declaring the relationship in documents executed by them while living together, such as deeds, wills, and other formal instruments." *Whyte*, 885 P.2d at 794–95; *see also Hansen*, 958 P.2d at 936.

"[C]onsent also may be established by acquiescence," as evidenced by "objective words and actions" by one spouse that led the other spouse "to believe that [the first spouse] had consented to marriage." *Whyte*, 885 P.2d at 794 n.3.

¶28　Here, although Vecchi points to his alleged refusal to marry Volk while in Utah, he does not acknowledge that Volk "denied that these proposals had ever occurred." And the court found Volk's testimony about the parties' relationship status to be credible, but it found Vecchi's testimony about it to be "inconsistent and contradictory." Thus, the court's determination that Vecchi consented to the rights and responsibilities of a marital relationship is not undermined by Vecchi's alleged rejections of Volk's proposals to marry because there is no finding that they ever occurred.

¶29　Vecchi also does not challenge or otherwise deal with the numerous determinations the court made on the issue of the parties' consent while in Utah. *See Gines v. Edwards*, 2017 UT App 47, ¶ 31, 397 P.3d 612 (explaining that an appellant must "engage with the bases" of the district court's determinations to carry his or her burden of persuasion on appeal); *Duchesne Land, LC v. Division of Consumer Prot.*, 2011 UT App 153, ¶ 8, 257 P.3d 441 (same); *see also State v. Gibson*, 2016 UT App 15, ¶¶ 10–11, 366 P.3d 876 (declining to reach the merits of the appellant's challenge where he failed "to adequately identify and engage with the evidence supporting the trial court's decision").

¶30　For example, tracking the consent indicia identified in *Whyte*, the court found that the "parties cohabitated for over 16 years, including years in Utah," and that during that time they "maintained joint bank accounts," "had joint credit accounts and car loans," "purchased and had joint ownership of four (4) parcels of real property," and "prepared and filed their tax returns together." The court also found that the parties "described themselves as husband and wife, or married, in the

presence of third parties" and "were generally known by persons in the Utah area . . . as a married couple"; that "the children used the surname of both parents"; and that Vecchi "even referred to [Volk's] parents as the 'in-laws' at trial." Additionally, the court found that "the parties were reflected as married in numerous documents executed . . . while they were living together, including insurance documents, loan documents on real property, and the like." For these reasons, the court ultimately concluded that the "indicia of common law marriage [were] present" and that "the parties consented to the common law marriage."

¶31    Because Vecchi does not acknowledge or persuasively deal with the court's findings on the issue of consent, Vecchi has not shown an abuse of discretion in the court's determination that the parties consented to a common law marriage. *See Gines*, 2017 UT App 47, ¶ 31; *Gibson*, 2016 UT App 15, ¶¶ 10–11.

¶32    In short, Vecchi has not demonstrated that the district court abused its discretion in determining that the parties consented to a common law marriage and acquired a uniform and general reputation as husband and wife. Accordingly, we affirm the district court's conclusion that Volk "met her burden" of showing that the parties had established a common law marriage in Utah.

## II. The District Court's Costs Decision

¶33    Vecchi also challenges the district court's failure to order that the parties share equally the costs of the custody evaluation. He characterizes the court's decision on this point as a complete failure to render a decision on the issue. He also claims that it is only equitable that both parties bear the cost of the evaluation because both parties benefitted from it.

¶34    We are unable to grant the relief Vecchi requests. To begin with, we question Vecchi's assertion that the district court

completely failed to render a decision on the costs issue. In its post-trial orders, the court expressly determined that it was "fair and equitable" for each party to "pay his or her own attorneys' fees and costs." On its face, this determination arguably includes the costs of the custody evaluation.

¶35 But to the extent Vecchi believed that the district court failed in not making a specific finding about the custody evaluation costs, it was incumbent on Vecchi to raise the issue in that court. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶¶ 50–56, 99 P.3d 801 (explaining that a challenge to the adequacy of a district court's findings must be raised before the district court in the first instance, or the issue will be deemed waived on appeal); *Seamons v. Wiser*, 2020 UT App 33, ¶¶ 12–14 (rejecting the argument that the district court failed to rule on two specific arguments where the appellant failed to raise the issue before the district court); *PC Crane Service, LLC v. McQueen Masonry, Inc.*, 2012 UT App 61, ¶¶ 46–47, 273 P.3d 396 (concluding that the appellant had waived the issue of the adequacy of the district court's costs findings where it did not raise it before the district court). He did not do so.

¶36 While Vecchi included the issue of the custody evaluation costs in his proposed findings of fact and conclusions of law, after the court issued its post-trial orders Vecchi would have been alerted to the alleged inadequacy in the court's findings with respect to the custody evaluation costs. Yet Vecchi has not directed us to any place in the record indicating that he alerted the court at any time following those orders to the alleged inadequacy he asserts on appeal. Nor have we discovered his presentation of the issue to the district court in our review. Accordingly, he has waived this issue for appeal, and we will not consider the issue further. *See PC Crane*, 2012 UT App 61, ¶¶ 46–47.

CONCLUSION

¶37    We conclude that Vecchi has not demonstrated that the district court abused its discretion in determining that the parties entered into a common law marriage in Utah. We also conclude that Vecchi has waived his argument with respect to the custody evaluation's costs. For these reasons, we affirm.

—————