**2024 UT App 107**

# THE UTAH COURT OF APPEALS

SEAN MCPHERSON,
Appellee,
*v.*
LYNN COPP,
Appellant.

Opinion
No. 20220404-CA
Filed August 1, 2024

Third District Court, Silver Summit Department
The Honorable Richard E. Mrazik
No. 194500029

Laja K. Thompson, Attorney for Appellant

Brody N. Miles, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion, in which JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

CHRISTIANSEN FORSTER, Judge:

¶1    This appeal involves a dispute between Sean McPherson and Lynn Copp over the recognition of their purported unsolemnized marriage. The trial court concluded that Copp failed to present sufficient evidence at an evidentiary hearing to establish a valid marriage between her and McPherson. The court found the two had maintained only a partial, rather than a uniform and general, reputation as a married couple in their communities, which is a required element of an unsolemnized marriage. We affirm the court's dismissal of Copp's counterclaim.

BACKGROUND[1]

¶2    McPherson and Copp met in Breckenridge, Colorado, in March 2010 and began living together in September of that same year. In January 2012, Copp gave birth to the parties' son (Son). At the time of Son's birth, McPherson and Copp "made a commitment to one another" that Son would take McPherson's last name, that "McPherson would stay involved in [Son's] life," and that "McPherson would financially support [Copp] and [Son]." In March 2012, McPherson, Copp, and Son moved to Denver, Colorado, for McPherson's new job.

¶3    Two years later, the parties' relationship deteriorated, and Copp told "McPherson [that] she was moving with [Son] to Chicago." In response, McPherson sought legal advice concerning custody of Son. Copp did not move to Chicago and instead followed McPherson in March 2015 to Utah, where McPherson had again relocated for work. McPherson, Copp, and Son lived together in a home they rented in Sandy, Utah. While there, Son began attending preschool at the Waldorf School, where Copp volunteered on the preschool board and met Son's teacher (Teacher). It was during this time that McPherson and Copp also met a neighbor (Sandy Neighbor). Son later attended Wasatch Woodland School, where Copp met a fellow kindergarten parent (WWS Parent).

¶4    In July 2017, McPherson and Copp moved to Mexico with Son briefly before returning to the United States. Upon their return, the parties began renting an apartment together in Holladay, Utah, and McPherson continued to financially support Copp. Later, the parties moved to Park City, Utah, and rented a home together there. However, despite living in the same household, the parties did not share a bedroom and had not engaged in sexual relations since before the summer of 2017.

---

1. The recitation of the facts is based on the trial court's unchallenged factual findings.

¶5     The parties formally separated in February 2019 when Copp sought a protective order against McPherson. After that filing, McPherson moved out of the Park City home and began living in Salt Lake City, Utah.

¶6     McPherson petitioned for custody of Son in 2019. Shortly thereafter, Copp filed a counterclaim to have the parties' relationship recognized as an unsolemnized marriage and for divorce. Copp asserted that the effective date of the parties' unsolemnized marriage was April 2012.

¶7     The trial court bifurcated the issue of the unsolemnized marriage from the other issues. The court ordered fact discovery to run from April 17, 2019, to November 11, 2019. Copp provided her initial disclosures on June 4, 2019, wherein she disclosed two witnesses—herself and McPherson. McPherson disclosed thirty-four witnesses, including family members, friends, and coworkers, in addition to himself.

¶8     On January 12, 2021, the trial court ordered a sixty-day extension for discovery related to the unsolemnized marriage issue in response to a stipulation filed by the parties. As part of the stipulation, the parties "agreed not to object to the use of previously disclosed witnesses." On March 16—the last day of the reopened discovery period—Copp provided a new list of thirty-two additional witnesses, but the pretrial disclosures did not list any contact information for most of the new witnesses. McPherson filed a motion seeking to exclude twenty-three of Copp's new witnesses, arguing that identifying these witnesses on the last day of discovery was untimely. The court agreed that Copp's witness disclosures were untimely and excluded twenty-three of the listed witnesses from testifying at the evidentiary hearing.

¶9     A three-day evidentiary hearing on Copp's counterclaim seeking to establish an unsolemnized marriage was held in June 2021, during which various witnesses testified. Following the hearing, the trial court issued its findings of fact, conclusions of

law, and order. Based on the evidence presented, the court found that "[s]everal witnesses testified credibly, and certain evidence corroborated, that the parties sometimes held themselves out as being married, and acquired at least a partial reputation as being married." Those witnesses included Copp's brother, Copp's mother, the parties' Park City landlord, Sandy Neighbor, WWS Parent, and others. However, the court also found that "numerous other witnesses testified credibly that they understood that the parties were not married, and the greater weight of the evidence shows the parties had acquired a reputation among [McPherson's] family, friends, and professional colleagues as not married." (Emphasis omitted.) The court found "no credible evidence" that McPherson "ever wore a wedding ring" or that Copp "ever used [McPherson's] last name as her own."

¶10    Based on the foregoing factual findings, the trial court concluded Copp had "failed to meet her burden of proving, by a preponderance of the evidence, that the parties 'hold themselves out as and have acquired a uniform and general reputation as husband and wife.'" (Quoting Utah Code § 30-1-4.5(1)(e).) The court continued that "the greater weight of the evidence shows the parties have acquired only a *partial* reputation as husband and wife, and have *inconsistently* held themselves out as husband and wife," and that "[t]his divided reputation precludes a finding that the parties 'have acquired a uniform and general reputation as husband and wife.'" As such, the court dismissed Copp's counterclaim based upon her failure to carry her burden of proving the "uniform and general reputation" element of an unsolemnized marriage.[2]

---

2. The trial court also concluded that Copp's counterclaim should be dismissed because Copp had failed to meet her burden to prove that "McPherson consented to be married to [Copp]." Although Copp challenges the court's conclusion on this point, we need not address this challenge in light of our resolution of the other issues raised on appeal. *See Volk v. Vecchi*, 2020 UT App 77,

(continued…)

ISSUES AND STANDARDS OF REVIEW

¶11    Copp now appeals the trial court's order, presenting two main issues for our review. First, she asserts that the court erred in finding that the parties had acquired only a partial reputation as husband and wife. "We do not reverse a trial court's findings of fact unless they are clearly erroneous." *Kelley v. Kelley*, 2000 UT App 236, ¶ 18, 9 P.3d 171 (quotation simplified).

¶12    Second, Copp asserts that the trial court abused its discretion in excluding twenty-three of her witnesses from testifying at the evidentiary hearing. "A district court has broad discretion in selecting and imposing sanctions for discovery violations under rule 26 [of the Utah Rules of Civil Procedure]. Appellate courts may not interfere with such discretion unless there is either an erroneous conclusion of law or no evidentiary basis for the district court's ruling." *Wallace v. Niels Fugal Sons Co.*, 2022 UT App 111, ¶ 26, 518 P.3d 184 (quotation simplified), *cert. denied*, 525 P.3d 1267 (Utah 2023); *see also* Utah R. Civ. P. 26(d)(4) ("If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document, or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure.").

ANALYSIS

I. Unsolemnized Marriage

¶13    A party seeking recognition of a marriage that is not solemnized must prove each of the five elements set forth in Utah Code section 30-1-4.5(1)(e) "by a preponderance of the evidence." *See Hansen v. Hansen*, 958 P.2d 931, 937 (Utah Ct. App. 1998); *see also Volk v. Vecchi*, 2020 UT App 77, ¶ 12, 467 P.3d 872 ("In proving

---

¶ 12, 467 P.3d 872 (explaining that a party attempting to prove the existence of an unsolemnized marriage must establish "each required [statutory] element . . . by sufficient evidence").

the existence of a common law marriage, . . . each required [statutory] element must be established by sufficient evidence."). These elements include establishing the existence of "a contract between a man and a woman who . . . hold themselves out as and have acquired a uniform and general reputation as husband and wife." Utah Code § 30-1-4.5(1)(e).

¶14 Here, the trial court concluded that Copp had not carried her burden to establish an unsolemnized marriage because Copp failed to prove that she and McPherson "acquired a uniform and general reputation as husband and wife." In reaching this conclusion, the court found that the greater weight of the evidence showed the parties had acquired only a partial reputation as being married. Copp contends the court's findings are clearly erroneous because of how the court "weigh[ed] the evidence." Specifically, Copp asserts the court gave "undue weight to the *quantity* of McPherson's witnesses" rather than focusing on "*the quality* of" the witness testimony, and that the court improperly "discredit[ed]" her witnesses.

¶15 This court has indicated that "a partial or divided reputation of marriage is insufficient to establish that a couple has acquired a uniform and general reputation as husband and wife, as required by section 30-1-4.5(1)(e)." *Volk*, 2020 UT App 77, ¶ 15 (quotation simplified). "A partial or divided reputation of marriage may be shown when the parties' closest friends do not consider the parties married and the parties are not consistent in holding themselves out as married to the rest of the world." *Id.* (quotation simplified). "Such circumstances negate the establishment of the statutory requirement that the couple acquire a uniform and general reputation as husband and wife." *Rivet v. Hoppie*, 2020 UT App 21, ¶ 11, 460 P.3d 1054 (quotation simplified).

¶16 After considering all the evidence, including extensive witness testimony, the trial court found the parties had "a partial reputation as being married." The court made several findings related to the witness testimony that had been provided, which

included findings concerning sixteen of McPherson's witnesses. The court found that these witnesses had all testified credibly "to the same effect—they knew the parties lived together, but were not married; that neither party ever said they were married; and that neither party ever introduced the other, or referred to the other, as 'spouse,' 'husband,' or 'wife.'"

¶17    However, the trial court also recognized the existence of conflicting evidence, finding that "certain evidence corroborated[] that the parties sometimes held themselves out as being married." The court found that several of Copp's witnesses—including Copp's brother, Copp's mother, the parties' Park City landlord, Sandy Neighbor, and WWS Parent—testified credibly as to this effect. But the court also found that many of Copp's witnesses—including Teacher, Sandy Neighbor, WWS Parent, and even Copp's mother—based their belief that the parties were married on a general assumption that people who live together and have a child together are married.

¶18    Copp contends these findings are clearly erroneous because McPherson's witnesses "knew only McPherson" and had "met Copp once or not at all." Thus, she argues that the trial court should have given "greater weight to the testimony of those witnesses who have first-hand knowledge of the couple's interactions at [Son's] school, in their neighborhood, and mutual friends." (Emphasis omitted.) But Copp's argument is unavailing in light of the applicable standard of review. It is well established that "a trial court's factual determinations are clearly erroneous only if they are in conflict with the clear weight of the evidence, or if this court has a definite and firm conviction that a mistake has been made." *Lamar v. Lamar*, 2012 UT App 326, ¶ 2, 292 P.3d 86 (quotation simplified). When reviewing a trial court's factual findings, we "must give due regard to the trial court's opportunity to judge the credibility of the witnesses." Utah R. Civ. P. 52(a)(4). When making findings or credibility determinations, the trial court need not "detail[] its justification for finding particular evidence more credible or persuasive than other evidence supporting a different outcome." *Shuman v. Shuman*,

2017 UT App 192, ¶ 6, 406 P.3d 258, *cert. denied*, 412 P.3d 1257 (Utah 2018). And when determining if the court's findings are "against the clear weight of the evidence and thus clearly erroneous, we view the facts in the light most favorable to the findings." *Kelley v. Kelley*, 2000 UT App 236, ¶ 18, 9 P.3d 171.

¶19    Copp complains that the trial court improperly weighed witness testimony, and it is apparent that she "clearly views the evidence as compelling a different outcome." *Shuman*, 2017 UT App 192, ¶ 9. "But it is not within our purview to engage in a reweighing of the evidence, and [Copp] has not demonstrated that the evidence underlying the trial court's findings is insufficient." *Id.* (quotation simplified). Indeed, the court's findings were based on a series of credibility determinations, which are best left to the trial court. *See* Utah R. Civ. P. 52(a)(4).

¶20    Based on the foregoing, we conclude that Copp has not demonstrated that the trial court clearly erred when making any of the challenged factual findings.

## II. Exclusion of Witnesses

¶21    Next, Copp asserts the trial court abused its discretion by excluding twenty-three of her witnesses from testifying as a sanction under rule 26 of the Utah Rules of Civil Procedure. We disagree.

¶22    Under rule 26(a)(1), parties must timely file initial witness disclosures that provide both the contact information and the expected testimony of each witness. Utah R. Civ. P. 26(a)(1). A party must make these disclosures "based on the information then known or reasonably available" to them, *id.* R. 26(d)(1), and "[a] party is not excused from making disclosures . . . because [they have] not completed investigating the case," *id.* R. 26(d)(3). If a party discovers that an initial disclosure is "incomplete," the party must "timely" supplement the disclosure and the supplemental disclosure "must state why the additional . . . information was not previously provided." *Id.* R. 26(d)(5). "When a party fails to

comply with rule-based disclosure requirements, that party is presumptively barred from relying on that witness, document, or material at trial" "unless the party seeking relief from disclosure requirements can demonstrate that its noncompliance was harmless or excused by good cause." *Bailey v. Bailey*, 2024 UT App 51, ¶ 25, 548 P.3d 519 (quotation simplified); *see also* Utah R. Civ. P. 26(d)(4).

¶23   On June 4, 2019, Copp filed her initial disclosures, which listed only two witnesses: herself and McPherson. Then, on March 16, 2021, the *last day* of the re-opened discovery (which was 491 days after original fact discovery had closed), Copp submitted her pretrial disclosures. These disclosures listed an additional thirty-two witnesses that Copp had not included in her initial disclosures. Copp did not explain why the additional witnesses were not disclosed prior to this date, and she did not include contact information for twenty-nine of these newly disclosed witnesses.

¶24   In its order addressing McPherson's motion to exclude Copp's newly disclosed witnesses, the trial court first concluded that Copp's disclosure of the additional witnesses was untimely. The court rejected Copp's argument that the disclosure was timely "because it came within the 60-day extension," reasoning as follows:

> [Copp] had a duty to disclose as many witnesses as she had knowledge of when making her initial disclosures, to timely supplement her initial disclosures as additional witnesses become known to her, *and* to provide an explanation as to why the additional witnesses were not previously disclosed. Rule 26 does not allow a party to wait until the last day of fact discovery to disclose 32 additional witnesses without an explanation of why the witnesses were not previously disclosed.

(Citations omitted.)

¶25 Under the circumstances, we perceive no abuse of discretion in the trial court's timeliness determination. This court has recently reaffirmed that "[d]epending on the circumstances, a disclosure produced a few days before the close of fact discovery may still not be considered timely." *De La Cruz v. Ekstrom*, 2024 UT App 18, ¶ 14, 545 P.3d 285. That is because "timeliness is determined under the facts and circumstances of each particular case, and in the sound discretion of the court." *Id.* ¶ 15 (quotation simplified). When making a timeliness determination, a court must assess a party's disclosures "against the backdrop of the time, place[,] and manner requirements relating to discovery in the case." *Id.* ¶ 18 (quotation simplified).

¶26 Here, the trial court did exactly that. Importantly, all thirty-two of Copp's undisclosed witnesses were family, friends, or general acquaintances that Copp had known for years. Indeed, the purpose of their testimony was to demonstrate that they had witnessed the parties over time and believed them to be married. Copp provided no explanation as to why she did not disclose these witnesses earlier, and as a key issue was whether the parties had acquired "a uniform and general reputation as husband and wife," the importance of these witnesses from the outset of the case was apparent. Given that the witnesses were known at the time Copp filed her initial disclosures and the lack of proposed justification for their late disclosure by Copp, the court properly exercised its broad discretion to assess Copp's disclosure as untimely.

¶27 After concluding that Copp's disclosure was untimely, the trial court then turned to the question of whether the untimely disclosure was either harmless or excused by good cause. *See* Utah R. Civ. P. 26(d)(4). Regarding good cause, the court found Copp's argument that she had been "represented by three different sets of counsel" and it was therefore "reasonable for certain details to be lost in the handoff between counsel" to be "unpersuasive." The court noted that Copp's current counsel had been representing her since December 2020, which was "more than three months before the close of the extended discovery period," and that

counsel therefore had "ample" time to discover that supplementation was necessary. Moreover, the court reasoned that Copp's prior counsel should have also been aware that supplementation was necessary given that prior counsel had filed and served declarations in 2019. We perceive no abuse of discretion in the court's assessment. That Copp was represented by three sets of counsel does not explain why any individual counsel was unable to identify the additional witnesses until the *last day* of discovery. In essence, Copp is asking us to disregard "the intent of rule 26, which is to preclude parties from trying to gain an advantage by offering 'surprise' testimony at trial that has not been disclosed to, or evaluated by, the opposing party," *Arreguin-Leon v. Hadco Constr. LLC*, 2018 UT App 225, ¶ 24, 438 P.3d 25, *aff'd*, 2020 UT 59, 472 P.3d 927, to make up for her counsel's failure to follow disclosure rules. This we will not do. As such, we discern no abuse in the court's good cause determination.

¶28 As to harm, the trial court analyzed the witnesses in two groups. For the first group of nine witnesses, the court concluded that Copp had previously submitted declarations and depositions for each witness and that the parties had stipulated "not to object to the use of previously disclosed witnesses." Accordingly, the court found that McPherson was not harmed by the late disclosure of these nine witnesses. The court reached the opposite conclusion, however, with regard to the other twenty-three witnesses. For this group, the court concluded that Copp's late disclosure harmed McPherson because it "deprived [him] of a reasonable opportunity" to evaluate those witnesses and to gain "knowledge he could have used in designing a discovery strategy and determining how to spend his litigation resources." Given the close proximity between the date of disclosure and the date of the evidentiary hearing, we perceive no abuse in the court's assessment that McPherson would have been harmed by allowing these witnesses to testify. Due to the late disclosure, McPherson was hamstrung in his ability to properly investigate and prepare to address these witnesses. Accordingly, we see no abuse of discretion in the court's finding of harm.

¶29    In sum, on the facts of this case, the trial court did not abuse its discretion in concluding that Copp's disclosure of the additional thirty-two witnesses was untimely. And the court likewise acted within its discretion in excluding twenty-three of those witnesses from testifying at the evidentiary hearing based on its determination that Copp did not show that her failure to timely disclose was harmless or excused by good cause.

CONCLUSION

¶30    Copp has failed to demonstrate that the trial court's factual findings concerning the parties' uniform and general reputation as husband and wife were clearly erroneous. Likewise, Copp has not demonstrated that the court abused its discretion in excluding many of her witnesses as a sanction for failing to timely disclose them. Accordingly, we affirm the dismissal of Copp's counterclaim.

_____